REQUESTED BY: Clifton A. Sexton, Jr., Director of Administrative Services.
In light of recent decisions by the United States Supreme Court, does Neb.Rev.Stat. § 83-380.01 (Reissue 1981), which requires the Department of Institutions to provide indigent outpatients with prescription medicines in certain instances, affect the state's `own use' exemption under the provisions of the Robinson-Patman Act, 15 U.S.C. § 13?
No, assuming that purchases by the state receive such an `own use' exemption.
In your letter requesting the opinion of this office, you indicated that the state purchasing operation of the Nebraska Department of Administrative Services recently completed a major bid solicitation for the state's drug requirements. One of the bids submitted in connection with that bid solicitation requested that the state complete a `Certification of Compliance with the Robinson-Patman Act.' That certification states that products purchased from the pharmaceutical company at other than standard prices are for the state's `own use' under the Robinson-Patman Act. Since Neb.Rev.Stat. § 83-380.01 (Reissue 1981) requires the Department of Public Institutions to furnish prescription medicines to indigent persons in certain circumstances, you asked whether that statutory requirement affected the state's `own use' exemption under the Act. Whether such an `own use' exemption applies to state purchases is of obvious importance to the drug manufacturer, since sales through the competitive bidding process may violate the Act absent such an exemption.
The Robinson-Patman Act, 15 U.S.C. § 13, prohibits price discrimination between different purchasers of commodities of like grade and quality where the effect of such discrimination may be to substantially lessen competition, to tend to create monopoly in any line of commerce, or to injure or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination. Until recently, it was generally believed that the Robinson-Patman Act did not apply to purchases by governmental entities. Consequently, manufacturers were free to submit bids to governmental entities at prices different from those offered to private entities, and governmental entities were free to resell any products purchased under bidding procedures without consideration of the provisions of the Robinson-Patman Act. Two recent United States Supreme Court decisions have altered that earlier perception of the applicability of the Act.
The first Supreme Court decision which is relevant to purchases by governmental entities is Abbott Laboratoriesv. Portland Retail Druggists Association, Inc., 425 U.S. 1
(1976). In Abbott Laboratories, the United States Supreme Court considered the breadth of the nonprofit institution exemption contained in Section 13c of the Robinson-Patman Act. That provision exempts purchases of supplies by nonprofit schools, colleges, universities, public libraries, churches, hospitals and other charitable institutions from the price discrimination provisions of the Act so long as those purchases are for the institution's `own use.'15 U.S.C. § 13c. The Abbott Laboratories decision held that the `own use' exemption provision is a limited one, and that not all purchases by a nonprofit institution receive a blanket immunity from Robinson-Patman scrutiny. The test for the availability of the exemption is whether the items purchased reasonably may be regarded as for the use of the institution in the sense that such use is a part of and promotes the entity's intended institutional operation. Under the specific facts in Abbott Laboratories, drugs used on the premises of a nonprofit hospital were generally found to be exempt under the Robinson-Patman Act while drugs sold to walk-in customers of the hospital's pharmacy did not qualify for the `own use' exemption.
Section 13c of the Robinson-Patman Act does not specifically include state agencies in its listing of nonprofit institutions eligible for the `own use' exemption. Therefore, it is not clear that such an exemption is even available for state purchases. Nevertheless, it is clear thatAbbott Laboratories narrows the `own use' exemption stated in Section 13c. It is also clear that any purchases by the State of Nebraska must meet the test established in AbbottLaboratories to qualify for that exemption.
The second Supreme Court case relevant to the present question is Jefferson County Pharmaceutical Association,Inc. v. Abbott Laboratories, ___ U.S. ___, 74 L.Ed.2d 882
(1983). In that case, a trade association of retail pharmacists sued drug manufacturers, the University of Alabama and a county hospital pharmacy for violations of the Robinson-Patman Act. The plaintiffs contended that manufacturers of drugs violated Robinson-Patman by selling products to the University and the county hospital at prices lower than those offered private retail pharmacies. In the case, the United States Supreme Court specifically considered the narrow issue of whether state purchases for the purpose of competing against private enterprise in the retail market were exempt from the Robinson-Patman Act. In the context of that narrow issue, the court held that such purchases were not exempt.
While the Jefferson County case indicates that all state purchases are not exempt from the price discrimination provisions of the Robinson-Patman Act, the court's opinion gives little guidance as to if or when such exemptions do apply. For example, the court assumed, but did not decide, that Congress did not intend the Robinson-Patman Act to apply to state purchases for consumption in connection with traditional governmental functions. The court also did not decide if sales made by a state to a class of indigents would be `in competition' with private enterprise so as to trigger the provisions of the Robinson-Patman Act. Therefore, the Jefferson County case gives little direct guidance for the present question other than to establish that state purchases are not uniformly exempt from the provisions of the Robinson-Patman Act.
We have reviewed the statute which is the subject of your opinion request in light of the Abbott Laboratories
and Jefferson County opinions. Neb.Rev.Stat. § 83-380.01
(Reissue 1981) requires the Department of Public Institutions to furnish medicines to indigent persons discharged from a treatment facility when those persons receive further treatment ordered by the mental health board which requires those medicines. In our view, the drug distributions required by § 83-380.01 appear to be in the nature of a traditional governmental function rather than a form of direct state competition with private pharmacies. This is particularly true since, under the statute, there is no sale of the drugs to indigent patients. It also appears to us that83-380.01 requires distributions of drugs which are for the state's own use as consistent with the intended institutional operations of the Nebraska Department of Public Institutions. Accordingly, assuming that there is an `own use' exemption available to the state under the Robinson-Patman Act, it appears that the drug distributions in question are for the state's `own use' under AbbottLaboratories and not in direct competition with retail pharmacies under Jefferson County. Section 83-380.01 does not, therefore, affect any `own use' exemption available to the state.
You also requested our view regarding several related questions. First of all, you ask whether the state is under any obligation to complete the Robinson-Patman certification supplied by the drug manufacturer in this case. In our view, the state is under no such obligation. However, the United States Supreme Court in the Abbott Laboratories opinion indicated that drug manufacturers may request some form of use certification from nonprofit entities or state agencies purchasing drugs. Therefore, such a certification request by the drug manufacturer does not seem unreasonable, and we suggest that completion of some form of certification may be appropriate. In that regard, you ask whether it would be appropriate to furnish the drug manufacturer with an alternative certification prepared by the Department of Public Institutions. That alternative certification indicates that the only distribution of medications purchased by the State of Nebraska for the Department of Public Institutions other than to inpatients or employees is the distribution to persons under Neb.Rev.Stat. § 83-380.01 (Reissue 1981). We have reviewed that alternative certification, and we feel that it is acceptable for distribution to the drug company in question.
Finally, you request our general view of the situation involving state competitive bids and the current status of the Robinson-Patman Act. Under the Jefferson County case, it is not clear as to whether purchases by the state have any exemption under the Robinson-Patman Act. However, it does seem to us that it is entirely possible to argue that state purchases for traditional governmental uses are exempt from the Act and that manufacturers who bid on state purchases in that context need not worry about potential Robinson-Patman violations. On the other hand, JeffersonCounty makes it clear that state purchases of supplies which are later sold at retail in direct competition with private enterprise do not receive any Robinson-Patman exemption. Consequently, when the state takes bids on purchases in order to compete with private enterprise, sales to state agencies by competitive bid may violate Robinson-Patman if the prices offered to the state differ from the prices offered private industry. As a practical matter, this may not cause much concern since it is unlikely that such sales will generate a large number of antitrust lawsuits. However, we believe that liability under the Robinson-Patman Act does exist for manufacturers who make sales to the state where resale activities occur which fall within the factual context of the Jefferson County case.
Sincerely yours,
PAUL L. DOUGLAS Attorney General
Dale A. Comer Assistant Attorney General
APPROVED:
Paul L. Douglas
Attorney General